Jennifer R. Scullion (183476)
Stephen A. Weiss (*pro hac vice forthcoming*)
SEEGER WEISS LLP
77 Water Street, 8th Fl.
New York, NY 10005
Telephone: (212) 584-0700
Facsimile: (212) 584-0799
E-mail: jscullion@seegerweiss.com
        sweiss@seegerweiss.com

Christopher A. Seeger (*pro hac vice forthcoming*)
Christopher L. Ayers (*pro hac vice forthcoming*)
SEEGER WEISS LLP
55 Challenger Road, 6th Floor
Ridgefield Park, New Jersey 07660
Telephone: (212) 584-0700
Facsimile: (212) 584-0799
E-mail: cseeger@seegerweiss.com
        cayers@seegerweiss.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CLAUDIA MCCONNAUGHEY, JOHN GILLIN II, JENIFER CASTO, AND ANDREA MALLOY, individually and on behalf of all others, | Civil Action No.: |
| Plaintiffs, | **CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |
| v. | |
| INTUIT INC., | |
| Defendant. | |

Claudia McConnaughey, John Gillin II, Jenifer Casto, and Andrea Malloy ("Plaintiffs"), on behalf of themselves and all others similarly situated, on personal knowledge as to the facts concerning themselves, on information and belief as to all other matters, and based on the investigation of counsel and public statements, bring this class action against Intuit Inc. ("Intuit") and allege as follows:

## NATURE OF ACTION

1.      This action concerns Intuit's campaign to intentionally divert and deceive lower-income tax payers who are eligible to receive free tax preparation and filing services under the United States Internal Revenue Service's ("IRS") Free File program ("Free File Program") to its paid TurboTax products.

2.      TurboTax is the market leading tax preparation software, owned and manufactured by Intuit, that is utilized to file more than 36 million tax returns for taxpayers every year.

3.      Pursuant to an agreement with the IRS, TurboTax and 11 other tax preparation providers are required to cumulatively offer 70% of U.S. taxpayers based on Adjusted Gross Income ("AGI") (currently anyone with an AGI of $66,000 or less) the option to file their taxes for free.

4.      The agreement was specifically designed to keep the IRS from creating its own free online filing system. According to the government, the goal of the Free File Program was to implement the IRS's public policy of "extending the benefits of online federal tax preparation and electronic filing to economically disadvantaged and underserved populations at no cost to either the individual user or to the public treasury."

5.      Intuit, however, has long been luring customers into paying for a service that it promised the government it would give away for free.

6.      With knowledge that the vast majority of its users (the lowest earning 70% percent of American taxpayers) qualify to file their taxes online for free using TurboTax, Intuit violated its agreement with the IRS and defrauded Plaintiffs and Class members by actively concealing public access to the IRS's Free File Program and intentionally diverting qualified taxpayers away from its "free filing" program in favor of its paid product offerings.

7.      Only a small percentage of American taxpayers file their faxes for free.  For example, in fiscal year 2018, fewer than 2.5 million of the 100 million eligible taxpayers (less than 2.5%) participated in the Free File Program.

8.      Intuit employed deceptive and misleading advertising to fraudulently induce lower-income taxpayers into purchasing TurboTax products when they were eligible for free services pursuant to Intuit's agreement with the IRS.  Indeed, Intuit marketed its paid offerings as "Free Guaranteed"—so that qualified taxpayers believed they were filing their taxes pursuant to the Free File Program, only to be hit with unexpected charges after they already spent hours entering information and preparing to file.

9.      Because Intuit's actions and omissions violate well established legal and statutory duties that they owed to Plaintiffs and all other similarly situated U.S. consumers, those individuals were forced to suffer the consequences.  As a result of this scheme, Intuit generated millions of dollars of ill-gotten gains from persons who can least afford it.

10.      Plaintiffs brings this class action on behalf of themselves and all similarly situated consumers for actual and statutory damages, as well as punitive damages and equitable relief to fully redress the vast harm Intuit's wrongful acts have unleashed on U.S. consumers.

## JURISDICTION AND VENUE

11.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337, as well as jurisdiction over the state law claims pursuant to 28 U.S.C. §§ 1332(d) and 1367 because this is a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and in which some members of the proposed Classes are citizens of a state different from the Defendant.

12.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 (b), (c), and (d), because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

13.      This Court has personal jurisdiction because Defendant does business in this District and a substantial part of the events and injury giving rise to Plaintiffs' claims occurred in this District.

1
2

**PARTIES**

**Plaintiffs**

3      14.    Plaintiff Claudia McConnaughey is a citizen of the state of New Jersey who paid
4    TurboTax to file her tax returns, despite qualifying for the IRS free filing program.  Had Intuit not
5    misrepresented the nature of its tax preparation and e-filing services and informed Plaintiff
6    McConnaughey of its intent to assess fees, she would not have navigated to TurboTax's website or
7    input her information.  Had Intuit made its free tax filing product accessible, Plaintiff would have
8    used it, rather than the paid version.

9      15.    Plaintiff John Gillin II is a citizen of the state of Pennsylvania who paid Turbo Tax
10   to file his tax returns, despite qualifying for the IRS free filing program.   Had Intuit not
11   misrepresented the nature of its tax preparation and e-filing services and informed Plaintiff Gillin
12   of its intent to assess fees, he would not navigated to Turbo Tax's website or input his information.
13   Had Intuit made its free tax filing product accessible, Plaintiff would have used it, rather than the
14   paid version.

15     16.    Plaintiff Jenifer Casto is a citizen of the state of Pennsylvania who paid Turbo Tax
16   to file her tax returns, despite qualifying for the IRS free filing program.   Had Inuit not
17   misrepresented the nature of its tax preparation and e-filing services and informed Plaintiff Casto
18   of its intent to assess fees, she would not have navigated to Turbo Tax's website or input her
19   information.  Had Intuit made its free tax filing product accessible, Plaintiff Casto would have used
20   it, rather than the paid version.

21     17.    Plaintiff Andrea Malloy is a citizen of the state of Pennsylvania who paid Turbo Tax
22   to file her tax returns, despite qualifying for the IRS free filing program.   Had Inuit not
23   misrepresented the nature of its tax preparation and e-filing services and informed Plaintiff Malloy
24   of its intent to assess fees, she would not have navigated to Turbo Tax's website or input her
25   information.  Had Intuit made its free tax filing product accessible, Plaintiff Malloy would have
26   used it, rather than the paid version.

27

**Defendants**

28     18.    Defendant Intuit Inc. ("Intuit") is headquartered in Mountain View, California, and

1   incorporated under the laws of the State of Delaware.  Intuit markets, sells, and operates TurboTax,

2   a tax preparation and filing software product and service, and is a member of the Free File Alliance,

3   a nonprofit coalition of twelve tax software companies under an agreement with the IRS to provide

4   free electronic tax services to eligible American taxpayers—the Free File Program.

5          19.    Defendant does business nationwide, including in this District.

6                              **FACTUAL ALLEGATIONS**

7          20.    Intuit Inc. is a financial software company that develops and sells financial,

8   accounting, and tax preparation software including TurboTax, QuickBooks, and Mint. The

9   company's most profitable software, TurboTax, is the leading tax preparation software that

10  provides step-by-step guidance for filling out state and federal tax returns and permits users to

11  electronically file their tax returns using a computer or mobile device.

12         21.    According to Intuit's website, "[m]ore federal returns are prepared with TurboTax

13  than any other tax preparation provider."  Intuit had revenues of more than $6.2 billion for the 12-

14  month period ending on January 31, 2019.

15  **A.    Intuit Agrees to Participate in the IRS's Free File Program**

16         22.    On October 30, 2002, Intuit and a group of electronic tax filing companies entered

17  into an agreement with the IRS entitled "Free Online Electronic Tax Filing Agreement" (the "Free

18  File Agreement").  The purpose of the Free File Agreement was to provide free electronic tax return

19  preparation and filing for qualified lower-income and economically disadvantaged taxpayers, who

20  were the least likely to be able to afford electronic tax filings for their returns.

21         23.    The benefits of the Free File Agreement served objectives of all parties.  It served

22  the IRS's objective of giving low-income taxpayers a way of being able to afford electronic tax

23  filings, as well as shifting the American public toward e-filing as a whole as opposed to paper filing.

24  It also helped the Intuit and the other 11 tax preparation providers' goal of not having to compete

25  with a government run e-file tax service, as the agreement specifically prevents the federal

26  government from entering into the electronic tax preparation software marketplace.

27         24.    This commitment from the government protects the viability of the commercial tax

28  preparers' business model by ensuring they can always charge a significant portion of the U.S.

population fees for their services.  Indeed, Intuit and its competitors spent millions of dollars lobbying against the IRS creating its own free tax filing system, as well as pushing Congress to codify the Free File Agreement to ensure that a free government-sponsored program cannot ever threaten the industry's profits.

25.    Under the Free File Agreement, Intuit agreed to coordinate with the IRS and the other providers to ensure that "their respective marketing of these Free Services … provide[s] uniformity" and "maximize[s] public awareness."  In 2002, the IRS wrote in the Federal Register: the Free File Agreement "provides that taxpayers will not have to go through additional steps or barriers to access the Free Service, beyond those steps required or imposed to access the comparable paid service."  The IRS also instructed that the Free File Program was to offer products "equivalent to those offered for sale on the commercial market," providing "all of the features and operability of those commercial products."

26.    Intuit and the other providers explicitly agreed that "[n]o marketing, soliciting, sales or selling activity, or electronic links to such activity, are permitted in the Free File Program," except for state tax returns or where the user proves to be ineligible for the Free File product.

27.    Over the sixteen years that Intuit has participated in the Free File Program, the Free File Agreement was extended eight times in documents known as "Memorandums of Understanding" or ("MOU").  The Eighth MOU is currently in effect and is extended until October 31, 2021.

28.    Article 2 of both the Seventh and Eighth MOUs states that Free File members  "shall … [m]ake tax return preparation and filing easier and reduce the burden on individual taxpayers, particularly the economically disadvantaged and underserved populations," and shall also "[p]rovide greater service and access to the [Free File] Services to taxpayers."

29.    The Eighth MOU added that "Members shall not include a 'value added' button (i.e., an icon, link or any functionality that provides a taxpayer with access to a Member's commercial products or services) on the Member's Free File Landing Page."  The Seventh MOU expressly provided that "[t]he Member shall have a prominent link permitting taxpayers on a Member's Paid Service Offering Page to easily and clearly return to the Member Free File Landing

1  Page."

2  30.    The Seventh and Eighth MOUs also prohibit "requesting or collecting

3  bank/financial information (e.g., debit/credit card information) from customers who qualify for a

4  free return where no state tax return products have been purchased."

5  31.    In addition, the Eighth MOU sets forth specific rules to ensure that consumers who

6  do not qualify for a particular member's Free File product are first redirected to other members'

7  Free File products, for which they might be eligible, before being offered a member's paid

8  products.

9  32.    The IRS Free-Filing Agreement and MOUs provide that Free File members must

10  offer 70% of U.S. taxpayers – or approximately 100 million people – the option to file their taxes

11  for free.  For the 2018 tax season, any taxpayer whose adjusted gross income is $66,000 or less is

12  eligible to use tax preparation software from one of these providers to prepare and file tax forms

13  for free, although each provider sets its own eligibility requirements.

14  33.    Because TurboTax is the market leader with 60% of the do-it-yourself tax market

15  and has more volume than its competitors, its eligibility requirements are more stringent.  For

16  TurboTax, a consumer qualifies for a free federal tax return if one has: 1) a gross annual income

17  of $34,000 or less; 2) is eligible for the Earned Income Tax Credit; or 3) is on active military duty

18  and has an annual gross income of $66,000 or less.

19  34.    While 70% of U.S. taxpayers are eligible to file for free, less than 2.5% of eligible

20  taxpayers actually utilize the program.  The reason for this disparity is due in large part to Intuit's

21  deceptive practices to prevent lower-income taxpayers from utilizing the program in favor of its

22  paid product offerings.

23  **B.    Intuit's Deceptive Practices and Misrepresentations**

24  35.    Although the Free File Program eliminated the threat that the government would

25  launch its own free tax filing program, it also threatened to reduce Intuit's profits by reducing the

26  percentage of customers who purchased its paid products.

27  36.    Intuit instituted a fraudulent scheme to ensure that eligible taxpayers would pay for

28  TurboTax's tax services.  Intuit set up two programs with similar and misleading names: the

TurboTax "Freedom Edition" and TurboTax "Free Edition."

37.    TurboTax's actual free product is referred to as TurboTax "Freedom Edition" – which enables users eligible to complete and e-file their federal tax returns for free in accordance with the Free File Program.

38.    Yet, TurboTax also offers a different "free" online tax product bearing a similar name: TurboTax "Free Edition."  Despite being heavily marketed, the TurboTax "Free Edition" is not associated with the Free File Program and is a basic software offering that supports only the simplest of tax returns, requiring most users (who are eligible for free filing under the Free File Agreement) to pay to file their returns.

39.    Instead of ensuring access to "taxpayers least able to afford e-filing tax returns at no cost to eligible taxpayers" and making "tax return preparation and filing easier and reduc[ing] the burden on individual taxpayers particularly the economically disadvantaged and underserved populations", Intuit did the opposite.  Intuit diverted and misled the very taxpayers it promised to protect in order to maximize its profits.

40.    On April 22, 2019, *ProPublica*, a non-profit organization focused on investigative journalism, released its first in a series of articles about the effect of TurboTax's deceptive business practices, entitled "*Here's How TurboTax Just Tricked You Into Paying to File Your Taxes*."[1]

41.    The authors first searched "irs free file taxes" on Google and the first four hits directed them to websites operated by members of the Free File Alliance:

---

[1] Justin Elliot and Lucas Waldron, "Here's How TurboTax Just Tricked you Into Paying to File Your Taxes", ProPublica (April 22, 2019), *available at* https://www.propublica.org/article/turbotax-just-tricked-you-into-paying-to-file-your-taxes

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15

16
17
18

19     42.     The first link was an ad paid for TurboTax that used the word "free" five times and

20  linked to TurboTax's homepage where TurboTax represented that customers' filings would be free

21  guaranteed: "$0 Fed. $0 State. $0 To File.  Easily and accurately file your simple tax returns for

22  FREE:"

23
24
25
26
27
28

1
2
3
4
5



6
7
8
9
10
11
12
13
14

15    43.    The authors then clicked on the link and began the process of filing returns for U.S.

16  taxpayers who made under $34,000 and would qualify for the IRS free filing program and satisfy

17  TurboTax's eligibility requirements.

18    44.    For example, the authors created a profile for a house cleaner who made $29,000.

19  After entering information and answering more than a dozen questions about her finances, the

20  house cleaner was informed that he would have to pay $119.99 to file because his income was

21  derived as an independent contractor:

22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17

18    45.    In another example, a pharmacy cashier without health insurance was told he would

19  have to pay $59.99 to file because an extra form is required if a person does not have health

20  insurance and "TurboTax Free Edition does not cover this situation."  This is exactly the kind of

21  situation that is covered by TurboTax "Freedom Edition" and the Free File Program—yet, Intuit

22  did not redirect the applicant to the applicable programs:

23
24
25
26
27
28

To accurately complete your taxes,
you need to upgrade to **TurboTax
Deluxe**

Why do I need to upgrade?

**You have Schedule 4, Other Taxes,** and that's just one of the
reasons the IRS requires you to file Form 1040.

TurboTax Free Edition does not cover this situation

46.    In further examining this issue, ProPublica found that, as soon as the authors clicked

on the "FREE GUARANTEED" option on the website, Intuit source code on the TurboTax website

tagged the person as NONFFA, meaning "Non Free File Alliance."  In other words, Intuit never

intended its "FREE GUARANTEED" option to be free.  It intended for any taxpayer, even if they

were eligible for free tax services under the Free File Agreement, to pay to have their tax return

prepared and filed by TurboTax:

```
ch: /personal—taxes/online/
cc: USD
c2: 2019-04-12T17:44:20.316Z
c5: NONFFA
c6: TT.com
c7: TTCamp
c9: 582c1659—f678-4316—a059-29ee9324cf4c
c14: performance|domComplete
```

47.    Following publication of the initial article, *ProPublica* published a follow-up

article entitled "*Here Are Your Stories of Being Tricked Into Paying by TurboTax. You Often*

*Need the Money*"[2] describing the stories of dozens of individuals who could not find the TurboTax's Free File services and, instead, ended up paying to file their return despite their low-income and eligibility for the Free File Program.

48.     Intuit's false advertising, and fraudulent, unfair and deceptive conduct directly contradicts the IRS's stated objective of providing free online preparation and filing for lower-income taxpayers.  Intuit purposefully omitted and/or concealed material facts regarding the eligibility of taxpayers to use Freedom Edition for free preparation and filing of simple to complicated taxes.

49.     By falsely convincing eligible taxpayers that they were unable to prepare and file their taxes for free, despite the existence of Freedom Edition, Intuit charged Plaintiffs and Class members for paid TurboTax products when it should have provided Freedom Edition for free pursuant to the Free File Program.

50.     Intuit's fraudulent conduct has also prevented the IRS from offering its own free filing service, which would be a direct competitor to TurboTax.

51.     As a direct and proximate result of Intuit's actions and omissions, Plaintiffs and similarly situated consumers have been harmed, injured, and damaged.  Not only has Intuit misled consumers, but Intuit has relied on fraudulent compliance with the Free File Program to keep the IRS from offering its own free-filing services, in order to increase its revenues at the expense of Plaintiff and Class members.

52.     Intuit's deceptive conduct has ensured that the Free File services intended by the Free File Agreement are not available from any reasonably-accessible TurboTax product or government source.

## CLASS ALLEGATIONS

53.     Plaintiffs bring all claims as class claims under Rules 23(b)(2), (b)(3), and (c)(4) of the Federal Rules of Civil Procedure.

---

[2] Ariana Tobin, Justin Elliott and Meg Marco, "Here Are Your Stories of Being Tricked Into Paying by TurboTax. You Often Need the Money", ProPublica (Apri 26, 2019), *available at* https://www.propublica.org/article/here-are-your-stories-of-being-tricked-into-paying-by-turbotax-you-often-need-the-money

54.    Plaintiffs bring their claims on behalf of a proposed nationwide class ("**National Class**"), defined as follows:

> All Free File Program-eligible persons or entities in the
> United States who paid to use a TurboTax product to file an
> online tax return for the 2002 through 2018 tax filing years.

55.    Plaintiff Claudia McConnaughey also brings her claims under New Jersey consumer and data protection statutes on behalf of a proposed statewide subclass ("**New Jersey Subclass**"), defined as follows:

> All Free File Program-eligible persons or entities who are
> New Jersey residents and who paid to use a TurboTax product
> to file an online tax return for the 2002 through 2018 tax filing
> years.

56.    Plaintiffs Gillin, Casto, and Malloy also bring their claims under Pennsylvania consumer and data protection statutes on behalf of a proposed statewide subclass ("**Pennsylvania Subclass**"), defined as follows:

> All Free File Program-eligible persons or entities who are
> Pennsylvania residents and who paid to use a TurboTax
> product to file an online tax return for the 2002 through 2018
> tax filing years.

57.    The National Class, the New Jersey Subclass, and the Pennsylvania Subclass are referred to, collectively, as the Classes.

58.    Excluded from the Classes are: the Defendant; any of its corporate affiliates; any of its directors, officers, or employees; any persons who timely elects to be excluded from any of the Classes; any government entities; and any judge to whom this case is assigned and their immediate family and court staff.

59.    Plaintiffs do not know the exact number of members in the Classes, but believe that there are hundreds of thousands of members.  The members of the Classes are so numerous that joinder of all members of any Class would be impracticable.  The names and addresses of Class

members are identifiable through documents maintained by Defendant.

60.     Common questions of law and fact exist as to all members of the Classes and, as appropriate, the members of each Subclass.

61.     The questions of law and fact common to the Classes include:

(a)     Whether Plaintiffs and Class members are third party beneficiaries to the Free File Agreement;

(b)     Whether Intuit knowingly failed to comply with, and/or breached its obligations under the Free File Program;

(c)     Whether Intuit engaged in fraud or fraudulent concealment;

(d)     Whether Intuit's website and/or advertising of the Free Edition is false and misleading to reasonable consumers;

(e)     Whether Intuit's online representations that its TurboTax service was guaranteed to be free were designed to, and did, induce Plaintiffs and Class members to use TurboTax, and spend time gathering and inputting factual details to submit their tax returns, before being informed that Intuit's services were not actually free;

(f)     Whether Intuit's online representations that its TurboTax service was guaranteed to be free would be important to a reasonable consumer's decision as to whether to use TurboTax to prepare and file a tax return;

(g)     Whether Intuit's online representations that its TurboTax service was free constituted bait-and-switching advertising;

(h)     Whether Intuit engaged in other improper conduct in furtherance of its misrepresentations, including manipulation of software source code and online ad placements to impede low-income taxpayers' ability to discover and navigate to its free filing website;

(i)     Whether Intuit violated the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*;

(j)     Whether Intuit violated the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*;

(k)     Whether Intuit violated the California False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq*.;

(l)     Whether Intuit was unjustly enriched by its unlawful conduct;

(m)     Whether Plaintiffs and Class members suffered injury, including ascertainable losses, as a result of Intuit's false and misleading advertising, and unlawful, unfair, fraudulent or deceptive acts or practices;

(n)     Whether Plaintiffs and Class members are entitled to actual damages, statutory damages, restitution, equitable, injunctive or other relief as warranted; and

(o)     Whether Intuit should be enjoined from continuing to perpetrate its scheme herein.

62.     Plaintiffs' claims are typical of the claims of the members of the Classes (and their respective Subclasses), and Plaintiffs will fairly and adequately protect the interests of the Classes. Plaintiffs and all members of the Classes are similarly affected by Defendants' wrongful conduct.

63.     Plaintiffs' claims arise out of the same common course of conduct giving rise to the claims of the other members of the Classes.

64.     Plaintiffs' interests are coincident with, and not antagonistic to, those of the other members of the Classes.

65.     Plaintiffs are represented by counsel competent and experienced in the prosecution of consumer protection and tort litigation.

66.     The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

67.     Class action treatment is a superior method for the fair and efficient adjudication of the controversy.   Among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense of numerous individual actions.  The benefits of proceeding as a class, including providing injured persons with a method for obtaining redress for claims that might not be practicable to pursue individually, substantially

outweigh any potential difficulties in managing this class action.

68.     The prosecution of separate actions by individual members of the Classes is not feasible and would create a risk of inconsistent or varying adjudications.

**FIRST COUNT**

**Fraud or Fraudulent Concealment**

**(On behalf of Plaintiffs and the Nationwide Class)**

69.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

70.     Plaintiffs bring this count on behalf of themselves and the members of the Nationwide Class or, alternatively, on behalf of the Sub-Classes.

71.     Defendant fraudulently concealed and suppressed material facts regarding Plaintiffs' and Class members' eligibility to use the fully-functional free tax product offered by TurboTax—the Freedom Edition. Instead, Intuit steered its eligible customers to TurboTax "Free Edition," a product with limited functionality, and fraudulently misrepresented that upgraded paid products were necessary in order to complete tax preparation and filing.

72.     Intuit had a duty to disclose the existence of its Free File product (the Freedom Edition), the fact that Freedom Edition could be used to prepare and file simple to complicated taxes (unlike Free Edition), and that Freedom Edition was offered free of charge as a result of the Free File Program.

73.     Intuit had exclusive and/or far superior knowledge and access to the facts regarding the Free File Program and the existence of its Freedom Edition product than Plaintiffs and Class members, and Defendant knew the facts regarding its various products that were not known to or reasonably discoverable by Plaintiffs and Class members.

74.     Intuit intentionally concealed the foregoing from Plaintiffs and members of the Class and made incomplete or fraudulent representations about the availability, applicability and cost of its TurboTax products, while purposefully withholding material facts regarding the eligibility of Plaintiffs and Class members to use Freedom Edition for free preparation and filing of simple to complicated taxes that contradicted these representations.

75.     A reasonable person purchasing online tax preparation and filing services would consider these misrepresentations, omissions, and concealed facts material because they would be relied on, and because they directly impact the prices paid by consumers, including Plaintiffs and Class members.  The cost of services is a material concern to a consumer, particularly when that consumer is entitled to those services for free.  Plaintiffs and Class members would not reasonably expect Intuit to take steps to actively prevent them from accessing the free Freedom Edition, deceive them about the existence and/or applicability of Freedom Edition and/or the Free File Program, and/or use bait-and-switch tactics to pressure filers entitled to free services to unnecessarily pay for Defendant's paid products.

76.     Intuit concealed and suppressed the distinction between Freedom Edition and Free Edition to falsely convince eligible taxpayers that they were unable to prepare and file their taxes for free, despite Defendant's participation in the Free File Program, and to charge Plaintiffs and Class members for tax preparation and filing through other TurboTax paid products.

77.     Defendant fraudulently misrepresented, omitted, and/or actively concealed and suppressed these material facts, in whole or in part, to protect its profits. Defendant concealed these facts at the expense of Plaintiffs and Class members, all the while reaping the benefits of the IRS's agreement to refrain from offering its own free filing services.

78.     Plaintiffs and Class members were unaware of these fraudulent misrepresentations and/or omitted or concealed material facts, and would not have paid Intuit to prepare and file their returns had they known of Defendant's fraudulent misrepresentations and/or omitted, concealed or suppressed facts.

79.     Had they been aware of the existence, functionality, and/or applicability of TurboTax "Freedom Edition," or the costs associated with the use of TurboTax "Free Edition" and associated product upgrades, Plaintiffs and Class members would not have paid Intuit to prepare and file their taxes, would have received free services through Freedom Edition, and/or would have used another provider entirely.

80.     Because of Intuit's fraudulent misrepresentations and/or omitted or concealed material facts, Plaintiffs and members of the Classes sustained damage because they paid for

services they should have received—and Defendant agreed with the IRS to offer—for free. Intuit made these fraudulent misrepresentations and/or omitted or concealed material facts in order to artificially inflate profits at the expense of Plaintiff and Class members.

81.  Accordingly, Defendant is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

82.  Intuit's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Class' rights and well-being, and with the aim of enriching Defendant. Defendant's conduct, which exhibits the highest degree of reprehensibility, being intentional, continuous, and targeted at those taxpayers most in need of free services, warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## SECOND COUNT

### Negligence

### (against Intuit)

83.  Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

84.  Intuit made false representations to Plaintiffs and Class members which Intuit did not intend to keep, and which Intuit in fact did not keep, to induce Plaintiffs and Class members to purchase Intuit's TurboTax services.  Plaintiffs and Class members reasonably relied on Intuit's false promises and did not receive the free tax preparation and filing services that Intuit promised them.

85.  Intuit manipulated its software source code to prevent consumers from discovering its Free File website though an internet search, steering them instead to its website with the false representations.  Further, Intuit made it impossible for consumers to navigate directly from the latter website to its actual Free File website, and deliberately failed to inform consumers of their eligibility to file their tax returns for free even after they shared information with Intuit demonstrating such eligibility.

86.     By its deceptive, misleading, and improper conduct alleged herein, Intuit obtained money from, and was unjustly enriched at the expense of, Plaintiffs and Class members.

87.     It would be inequitable and unconscionable for Intuit to retain the profits, benefits, and other compensation it obtained through its deceptive, misleading, and improper conduct.

88.     Plaintiffs and Class members are entitled to restitution or disgorgement of, or the imposition of a constructive trust upon, all profits, benefits, and other compensation obtained by Intuit through its deceptive, misleading, and improper conduct.

**THIRD COUNT**

**Violations of the California Unfair Competition Law**

**(Cal. Bus. & Prof. Code §17200, *et seq.*)**

**(On behalf of Plaintiffs and the Nationwide Class)**

89.     Plaintiffs incorporate by reference all the above allegations as if fully set forth herein.

90.     California's Unfair Competition Law ("UCL"), California Business and Professions Code §17200, prohibits any "unlawful, unfair, or fraudulent business act or practices."

91.     Defendant is a person under Cal. Bus. & Prof. Code § 17201.

92.     In the course of its business, Defendant violated the UCL by engaging in unlawful, fraudulent, and unfair and deceptive business acts and practices. Defendant violated each prong of the UCL.

93.     Specifically, Intuit violated the fraudulent prong of the UCL by, *inter alia*, knowingly and intentionally fraudulently misrepresenting and concealing from Plaintiffs and members of the Class that TurboTax Free Edition is not a Free File Program-compliant product, offers limited functionality, and requires consumers to upgrade to costly paid products for anything other than the most basic tax returns. Intuit also violated the fraudulent prong of the UCL by fraudulently misrepresenting, omitting, and concealing the existence, functionality, and applicability of Freedom Edition.

94.     Intuit violated the unlawful prong of the UCL by violating California statutory and common law prohibiting false advertising, unfair and deceptive trade practices, fraud and

fraudulent concealment, including *inter alia*, the Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* and the California False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*

95.     Intuit violated the unfair prong of the UCL because the acts and conduct alleged herein offend established public policy, and are immoral, unethical, unscrupulous, or substantially injurious, and the harm Intuit caused to consumers greatly outweighs any benefits associated with its practices.

96.     In addition, Intuit violated the UCL by, *inter alia*, hiding its Free File product from the public, inserting code into its website for Freedom Edition that would prevent the product from appearing in online search results so that, if taxpayers looking to use TurboTax's Free File Program tried to use a search engine to find it, they would be directed to Free Edition and TurboTax's other paid products, and not the free service that they sought, and not providing a link from its website to access Freedom Edition.  This conduct was taken by Intuit to artificially inflate profits and deprive low-income consumers of a free product.

97.     Intuit further violated the UCL by marketing Defendant's functionally-limited Free Edition as "free," while concealing the existence, availability, and functionality of Freedom Edition and marketing paid products to consumers when they were unable to prepare their taxes for free due to the limited functionality of Free Edition. Intuit marketed Free Edition with the intent to confuse consumers with the Free File product, Freedom Edition.

98.     Intuit fraudulently misrepresented that paid products were required when Freedom Edition could have been used to prepare and file taxes for free, and only informed customers of the need to purchase paid products after they went through the time-consuming process of entering personal information into Free Edition. Once this occurred, there was no easy way to transfer that information to Freedom Edition.

99.     Defendant's fraudulent scheme, material omissions and concealment of the true characteristics of TurboTax "Free Edition" and the existence, availability, and functionality of TurboTax "Freedom Edition" were material to Plaintiffs and the Class. Intuit fraudulently misrepresented, concealed, and/or failed to disclose the truth regarding Freedom Edition and Free Edition with the intent that Plaintiffs and Class members would rely on the misrepresentations,

concealments, and omissions.

100.    Had they known the truth, Plaintiffs and Class members would have used Freedom Edition to prepare and file their taxes for free (as Intuit promised the IRS), would not have used Free Edition, and/or would not have been fraudulently induced to pay Intuit for use of its paid products.

101.    Plaintiffs and Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's fraudulent misrepresentations, omissions, concealment of and failure to disclose material information, and violations of California common and statutory law, including, *inter alia*, all monies paid to Intuit for tax preparation and filing.

102.    Defendant acted knowingly, intentionally, and/or with reckless disregard for the rights of Plaintiffs and Class members. Intuit's fraudulent, unfair, and unlawful conduct continues to this day.

103.    Plaintiffs and Class members seek declaratory, injunctive, and equitable relief, including restitution and/or restitutionary disgorgement, and any other just and proper relief available under the UCL.

### **FOURTH COUNT**

**Violations of the California Consumers Legal Remedies Act**

**(Cal. Civ. Code § 1750, *et seq.*)**

**(On behalf of Plaintiffs and the Nationwide Class)**

104.    Plaintiffs incorporate by reference all the above allegations as if fully set forth herein.

105.    California's Consumers Legal Remedies Act ("CLRA"), Cal Civ. Code §1750, *et seq.*, prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a).

106.    Intuit is a "person" within the meaning of California Civil Code sections 1761(c) and 1770, and provided "services" within the meaning of sections 1761(b) and 1770.

107.    Intuit's acts and practices, as alleged in this complaint, violate the CLRA because

they include unfair and deceptive acts and practices in connection with transactions (the sale of tax preparation and filing services).  In violation of California Civil Code section 1770(a)(9), Intuit advertised its tax preparation and filing services with intent not to sell them as advertised.

108.    A reasonable consumer would attach importance to Intuit's misrepresentations alleged herein, and would be induced to act on the information in making purchase decisions.

109.    Intuit engaged in the acts and practices alleged herein with the intent to induce consumers to purchase Intuit tax preparation and filing services.  Defendant knew that its choice of names and marketing of Free Edition was confusing to customers, fraudulently misrepresented or omitted the differences between Free Edition, Freedom Edition, and its paid products, and failed to disclose and actively concealed those differences as well the ability of Plaintiffs and Class members to use Freedom Edition for fully free tax preparation and filing pursuant to the Free File Program.

110.    Intuit's acts and practices did in fact result in the sale of Intuit tax preparation and filing services to Plaintiffs and Subclass members, thereby causing them harm.

111.    Defendant knew or should have known that its conduct violated the CLRA.

112.    Defendant owed Plaintiffs and Class members a duty to disclose the true costs associated with TurboTax Free Edition, as well as the existence, availability, and functionality of TurboTax Freedom Edition, because Defendant (1) had exclusive and/or far superior knowledge and access to the facts regarding the Free File Program, Free Edition, and Freedom Edition than Plaintiffs and Class members; (2) knew the facts regarding its various products that were not known to or reasonably discoverable by Plaintiffs and Class members; (3) intentionally concealed the foregoing from Plaintiffs and Class members; and (4) made incomplete or fraudulent representations about the cost of its services, while purposefully withholding material facts regarding the eligibility of Plaintiffs and Class members for truly free filing that contradicted these representations.

113.    As a direct and proximate result of Defendant's violations of the CLRA, the members of the Classes have suffered injury-in-fact and/or actual damage.

114.    In accordance with section 1782(a) of the CLRA, Plaintiffs will serve Defendant with notice of their and the Class' claims and demand that Defendant correct or agree to correct the

1   actions described therein. If Defendant fails to do so, Plaintiffs will amend this Complaint to seek

2   compensatory and actual damages to which Plaintiffs and Class members are entitled.

3                                          **FIFTH COUNT**

4                    **Violations of the California False Advertising Law**

5                        **(Cal. Bus. & Prof. Code § 17500, *et seq.*)**

6                        **(On behalf of Plaintiff and the Nationwide Class)**

7          111.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if

8   fully set forth herein.

9          112.    Plaintiffs brings this claim on behalf of herself and the Nationwide Class.

10         113.    Cal. Bus. & Prof. Code §17500 (the "FAL") states: "It is unlawful for any …

11  corporation … with intent directly or indirectly to dispose of real or personal property … to induce

12  the public to enter into any obligation relating thereto, to make or disseminate or cause to be made

13  or disseminated … from this state before the public in any state, in any newspaper or other

14  publication, or any advertising device, … or in any other manner or means whatever, including

15  over the Internet, any statement … which is untrue or misleading, and which is known, or which

16  by the exercise of reasonable care should be known, to be untrue or misleading."

17         114.    Intuit caused to be made or disseminated through California and the United States,

18  through advertising, marketing and other publications, statements that were untrue or misleading,

19  and which were known, or which by the exercise of reasonable care should have been known to

20  Intuit, to be untrue and misleading to consumers, including Plaintiff and Class members.

21         115.    Intuit violated the FAL because the misrepresentations and omissions regarding the

22  true cost of TurboTax Free Edition, as well as the existence, availability, and functionality of

23  TurboTax Freedom Edition, were material to Plaintiffs and Class members, were likely to deceive

24  a reasonable consumer, and deceived Plaintiffs and Class members.

25         116.    As a direct and proximate result of Intuit's untrue and misleading advertisements,

26  Plaintiffs and Class members have suffered an injury in fact, including the loss of money or

27  property.  In using Defendant's paid products, Plaintiffs and Class members relied on Defendant's

28  untrue and misleading advertisements with respect to the true costs associated with TurboTax Free

Edition, as well as the existence, availability, and functionality of TurboTax Freedom Edition. Had Plaintiffs and Class members known they could use Freedom Edition to prepare and file simple to complicated taxes for free, they would not have paid for Defendant's paid products. Accordingly, Plaintiffs and Class members overpaid for Defendant's services and did not receive the benefit of the Free File Program.

117.    The wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendant's business. Defendant's wrongful conduct is part of a course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

118.    Plaintiffs and Class members seek injunctive relief, restitution, and such other relief as is available under the FAL.

**SIXTH COUNT**

**Violation of New Jersey Consumer Fraud Act**

**N.J. STAT. ANN. § 56:8-1, *et seq*.**

**(On behalf of Plaintiff and the New Jersey Sub-Class)**

119.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

120.    Defendant and the New Jersey State Class members are "persons" within the meaning of N.J. STAT. ANN. § 56:8-1(d).  Defendant engaged in "sales" of "merchandise" within the meaning of N.J. STAT. ANN. § 56:8-1(c), (e).

121.    The New Jersey Consumer Fraud Act ("New Jersey CFA") makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby…"  N.J. STAT. ANN. § 56:8-2.

122.    In the course of its business, Intuit violated the New Jersey CFA by knowingly misrepresenting and intentionally concealing material facts concerning the true cost of TurboTax

Free Edition, as well as the existence, availability, and functionality of TurboTax Freedom Edition, as detailed herein. Specifically, in marketing, offering for sale, and selling its services, Defendant engaged in one or more of the following unfair or deceptive acts or practices as defined in N.J. STAT. ANN. §56:8-2: (1) representing that Intuit's Free Edition and paid products have characteristics or benefits which they do not have; (2) representing that Intuit's Free Edition and paid products are of a particular standard and quality, when they are not; and/or (3) advertising Freedom Edition, Free Edition and TurboTax paid products with the intent not to sell them as advertised.

123. Defendant's scheme and concealment of the true costs associated with TurboTax Free Edition, as well as the existence, availability, and functionality of TurboTax Freedom Edition were material to Plaintiff and the New Jersey Sub-Class, and Defendant misrepresented, concealed, or failed to disclose the truth with the intention that Plaintiff and the New Jersey Sub-Class would rely on the misrepresentations, concealments, and omissions. Had they known the truth, Plaintiff and the New Jersey Sub-Class would have used Freedom Edition to prepare and file their taxes for free, would not have used Defendant's paid products, or would have filed their taxes with another provider. Accordingly, Class members overpaid for Defendant's services and did not receive the benefit of the Free File Program.

124. Plaintiff and the New Jersey Sub-Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant concealed or failed to disclose, particularly in light of Defendant's manipulation of search engine results and fraudulent concealment of Freedom Edition.

125. Defendant had an ongoing duty to Plaintiff and the New Jersey Sub-Class to refrain from unfair and deceptive practices under the New Jersey CFA in the course of its business. Specifically, Defendant owed Plaintiff and the New Jersey Sub-Class members a duty to disclose all material facts concerning its tax preparation and filing products because it possessed exclusive knowledge, it intentionally concealed such material facts from Plaintiff and the New Jersey Sub-Class, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

126.    Intuit intentionally and knowingly misrepresented material facts regarding its tax preparation and filing products with the intent to mislead Plaintiff and the New Jersey Sub-Class.

127.    Intuit's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and members of the New Jersey Sub-Class.

128.    Intuit knew or should have known that its conduct violated the New Jersey CFA.

129.    Intuit's unlawful acts and practices complained of herein affect the public interest.

130.    Plaintiff and the New Jersey Sub-Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's unfair and deceptive practices, concealment, misrepresentations, and/or failure to disclose material information.

131.    Plaintiff and the New Jersey Subclass seek relief under N.J. Stat. Ann. § 56:8-19, including, but not limited to, injunctive relief, other equitable actual damages (to be proven at trial), disgorgement of wrongfully obtained profits, treble damages, and attorneys' fees and costs.

**SEVENTH COUNT**

**Violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law,**

**72 Pa. Cons. Stat. §§ 201-2 & 201-3, *et seq*.**

**(On behalf of Plaintiffs and the Pennsylvania Sub-Class)**

132.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

133.    Defendant and the Pennsylvania Class members are "persons" with the meaning of Pa. Cons. Stat. § 201-2.  Plaintiffs and Pennsylvania Class Members purchased goods and services in "trade" and "commerce", as meant by 73 Pa. Cons. Stat. § 201-2(3), primarily for personal, family and/or household purposes.

134.    Defendant engaged in unfair and deceptive acts and practices in the conduct of its trade and commerce in violation of 73 Pa. Cons. Stat. § 201-2(3), by representing the following: (1) causing confusion and misunderstanding as to the source of its goods and services (73 Pa. Cons. Stat. § 201-4(ii)); (2) that its goods and services have uses and benefits that they do not have (73 Pa. Cons. Stat. § 201-4(v));  (3) representing that its goods are of a particular standard or quality (73 Pa. Cons. Stat. § 201-4(vii)); (4) advertising goods and services with the intent not to sell them

as advertised (73 Pa. Cons. Stat. § 201-4(ix)); and (5) advertising its goods and services with the intent not to supply reasonably expectable public demand (73 Pa. Cons. Stat. § 201-4(x)).

135.    Defendant's scheme and concealment of the true costs associated with TurboTax Free Edition, as well as the existence, availability, and functionality of TurboTax Freedom Edition were material to Plaintiffs and the Pennsylvania Sub-Class because they relied on the misrepresentations, concealments and omissions.  Had they known the truth, Plaintiffs and the Pennsylvania Sub-Class would have used Freed Edition to prepare and file their taxes for free and would not have used Defendant's paid products, or they would have filed their taxes with another provider.  According, Class members overpaid for Defendant's services and did not receive the benefit of the Free File Program.

136.    Plaintiffs and the Pennsylvania Sub-Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant concealed or failed to disclose, particularly in light of Defendant's manipulation of search engine results and fraudulent concealment of Freedom Edition.

137.    Intuit intentionally and knowingly misrepresented material facts regarding its tax preparation and filing products with the intent to mislead Plaintiffs and the Pennsylvania Sub-Class.

138.    Intuit knew or should have known that its conduct violated Pennsylvania Unfair Trade Practices and Consumer Protection law.

139.    Intuit's unlawful acts and practices complained of herein affect the public interest.

140.    Plaintiffs and the Pennsylvania Sub-Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's unfair and deceptive acts and practices.

141.    Plaintiffs and the Pennsylvania Sub-Class members seek relief under 73 Pa. Cons. Stat. § 201-9, including, but not limited to, seek all monetary and non-monetary relief allowed by law, including actual damages or one hundred dollars, whichever is greater, treble damages, attorney's fees and costs, and any additional relief the Court deems necessary or proper.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request, individually and on behalf of the alleged Classes and Subclasses, that the Court enter judgment in their favor and against Defendant as follows:

    A.   An Order certifying each of the proposed Classes and appointing Plaintiffs and their Counsel to represent the Classes;

    B.  An Order enjoining Defendant from engaging in the wrongful conduct alleged herein concerning the unlawful, deceptive, fraudulent, harmful, and unfair business conduct and practices;

    C.  An Order compelling Defendant to notify eligible taxpayers, provide a direct link on the TurboTax website to properly advertise Freedom Edition to eligible participants, and fully reimbursing and making whole Plaintiff and all members of the Classes for all costs paid to Intuit and economic losses;

    D.  An Order of disgorgement of wrongfully obtained profits;

    E.  An award of compensatory, statutory, and punitive damages, in an amount to be determined;

    F.  An award of reasonable attorneys' fees costs and litigation expenses, as allowable by law;

    G.  Interest on all amounts awarded, as allowed by law; and

    H.  Such other and further relief as this Court may deem just and proper.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURY DEMAND**

Plaintiffs demand, for themselves and each of the classes, a trial by jury, pursuant to the Federal Rules of Civil Procedure, of all issues so triable.

DATE: June 27, 2019

Respectfully submitted,

s/ Jennifer R. Scullion
Jennifer R. Scullion (183476)
Stephen A. Weiss (*pro hac vice forthcoming*)
SEEGER WEISS LLP
77 Water Street, 8th Fl.
New York, NY 10005
Telephone: (212) 584-0700
Facsimile: (212) 584-0799
E-mail: jscullion@seegerweiss.com
       sweiss@seegerweiss.com

Christopher A. Seeger (*pro hac vice forthcoming*)
Christopher L. Ayers (*pro hac vice forthcoming*)
SEEGER WEISS LLP
55 Challenger Road, 6th Floor
Ridgefield Park, New Jersey 07660
Telephone: (212) 584-0700
Facsimile: (212) 584-0799
E-mail: cseeger@seegerweiss.com
       cayers@seegerweiss.com